# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# AT LOUISVILLE
# CIVIL ACTION NO. 3:13CV-P639-H

JOSEPH PATRICK HUMPHREY                                                                     PLAINTIFF

v.

DR. KHAAD *et al.*                                                                                           DEFENDANTS

## MEMORANDUM OPINION

Plaintiff, Joseph Patrick Humphrey, filed the instant *pro se* 42 U.S.C. § 1983 action proceeding *in forma pauperis*. This matter is before the Court on initial review pursuant to 28 U.S.C. § 1915A. Upon review, the Court will dismiss the action.

## I.

Plaintiff was a convicted inmate at the Roederer Correctional Complex at the time of filing this lawsuit. His complaint concerns his previous incarceration at the Louisville Metro Department of Corrections (LMDC). He sues the following individuals: Drs. Khaad and Arbach,[1] whom he identifies as doctors at LMDC; Ron, whom he identifies as an LMDC nurse; Puckett, whom he identifies as an LMDC grievance counselor; Lee Zellars, whom he identifies as an LMDC "Administrator-Medical"; and Keith English, whom he identifies as an LMDC case worker. He sues each Defendant in his or her official capacity only.

Plaintiff reports that on April 23, 2013, he "visited the doctors on the 3rd floor at LMDC." He states that "the first situation I noticed upon arrival was that a Phabotamis was taking blood from another inmate." He states that Defendant Dr. Khaad asked him to leave for a

---

[1] Plaintiff uses more than one spelling for the names of Defendants Khaad and Arbach. Where not directly quoting the complaint, the Court will use the spelling of these Defendants' names as they are listed in the complaint caption.

minute and then an assistant told him to come back in the room. When he reentered the room, the phlebotomist was still taking blood from the other inmate. Plaintiff further states as follows:

> Dr. Kaad began to proceed with my medical inquiries. There was certain things that I wished to disclose with Dr. Kadd and told him that I did not feel comfortable in front of another inmate. These actions were a violation of the United States Constitution, Amedments 14, 8 Due Process. Under my HIPA right I am supposed to been seen in private with the doctor and/or the nurse. Dr. Kadd also made it aware that he knew this was a HIPA violation. Dr. Kaad asked me to wait a moment while he spoke with the Phabotamis in private, so that he could inform her again that she needed a different room. Prior to Dr. Kaad making these admissions of this being a HIPA violation he told the other inmates that it was okay for inmates to be in the same room together. After he spoke with the Phabotmis he stated that we have the right to privacy and confidentiality. The doctor then put me in for a follow up review on 4/30/2013.

After this, Plaintiff states that he was waiting on the results of his EKG and chest x-rays and he "continued to file HSR's because the condition of my health was becoming worse, and was still not receiving proper treatment. I feel I was denied proper medical treatment and filed a grievance . . . ." He avers the once "L.M.D.C. received the grievance I filed they did everything that they could to transfer me, in order for there to be justification in not answering my grievances. I believe that my transfer was more in retaliation than necessity." He contends that LMDC was not supposed to transfer him pursuant to a "non-transport order granted via my counsel . . . in court."

Plaintiff further states that, while at morning pill call on several occasions, Defendant Ron made unprofessional comments to him, such as "'are you writing me love letters?'" and "'the idea is to get rid of you.'" He contends that on May 16, 2013, Defendant Zellars and three non-Defendants "attempted to ask me questions about my medical issues, basically asking if I had mental issues." Plaintiff responded that he did not have mental issues. Plaintiff states that he saw Defendant Dr. Arboc who asked Plaintiff if he was having problems sleeping and that

2

Plaintiff responded that he did have problems due to chronic pain. Defendant Arboc diagnosed Plaintiff with fibromyalgia and prescribed a generic of Ellivil, which Plaintiff states, "is a anti depressant which they say is used for other purposes as well. I believe this was done in order to make me sleep and not pursue this action I am taking now." Plaintiff contends that giving him the wrong medication was a violation of his constitutional rights. He states that he has suffered anxiety, fear, and emotional distress due to being prescribed the wrong medication.

Plaintiff also avers that Defendant English was supposed to make a copy of Plaintiff's § 1983 complaint packet concerning another facility but did not return it to Plaintiff. He states that he also asked Defendant English to contact an attorney for him but he "never heard anything back."

As relief, Plaintiff seeks compensatory and punitive damages.

## II.

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the complaint, or any portion of it, if the court determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* §§ 1915A(b)(1), (2); *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).

In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "But the district court need not accept a 'bare assertion of legal conclusions.'" *Tackett*, 561 F.3d at 488 (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)).

Although this Court recognizes that *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), "[o]ur duty to be 'less stringent' with pro se complaints does not require us to conjure up unpled allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted). And this Court is not required to create a claim for Plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). To command otherwise would require the Court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### III.

**A.     42 U.S.C. § 1983 claims**

Plaintiff sues each Defendant in his or her official capacity only. "Official-capacity suits . . . 'generally represent [] another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)). Plaintiff's official-capacity claims against

4

each Defendant is, therefore, actually a claim against the Louisville Metro government. *See Lambert v. Hartman*, 517 F.3d 433, 440 (6th Cir. 2008).

When a § 1983 claim is made against a municipality, this Court must analyze two distinct issues: (1) whether Plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the municipality is responsible for that violation. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992). The Court will first address the second issue, *i.e.*, whether the municipality is responsible for the alleged constitutional violation.

*Municipal policy*

"[A] municipality cannot be held liable *solely* because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691; *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994); *Berry v. City of Detroit*, 25 F.3d 1342, 1345 (6th Cir. 1994). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479-80 (1986)) (emphasis in original).

A municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Monell*, 436 U.S. at 691; *Deaton v. Montgomery Cnty., Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). Simply stated, the plaintiff must "identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 363-64 (6th Cir. 1993) (quoting *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987), *overruled on other grounds by Frantz v.*

5

*Vill. of Bradford*, 245 F.3d 869 (6th Cir. 2001)). The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Searcy*, 38 F.3d at 286 (quoting *Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981) (citation omitted)); *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 404 (1997) (indicating that the plaintiff must demonstrate "deliberate conduct").

In the instant case, Plaintiff has not alleged that any Defendant acted pursuant to a municipal policy or custom in causing his alleged harm. Plaintiff's complaint appears to allege isolated occurrences affecting only him. *See Fox v. Van Oosterum*, 176 F.3d 342, 348 (6th Cir. 1999) ("No evidence indicates that this was anything more than a one-time, isolated event for which the county is not responsible."). As nothing in the complaint demonstrates that any of Defendants' actions occurred as a result of a policy or custom implemented or endorsed by the Louisville Metro government, the complaint fails to establish a basis of liability against the municipality and fails to state a cognizable § 1983 claim against it. Accordingly, the official-capacity claims against all Defendants will be dismissed.

*Constitutional violation*

Even if Plaintiff had alleged that Defendants acted pursuant to a municipal policy or custom in causing his alleged harm, Plaintiff would still have to allege facts demonstrating that his harm was caused by a constitutional violation.

*Medical inquiries*

Based on the complaint, Defendant Dr. Khaad made "medical inquiries" of Plaintiff, but Plaintiff did not feel comfortable disclosing information in front of another inmate. Disclosure of an inmate's confidential medical information does not give rise to a violation of the Eighth Amendment's prohibition on cruel and unusual punishments. *Townsend v. Reaume*, No. 1:13-

cv-729, 2013 U.S. Dist. LEXIS 103917, at *9 (W.D. Mich. July 25, 2013) (citing *Estelle v. Gamble*, 429 U.S. 97, 107 (1976)). Disclosure of an inmate's medical information to another inmate may give rise to a constitutional violation under the Fourteenth Amendment. *See Moore v. Unknown Prevo*, 379 F. App'x 425, 427 (6th Cir. 2010); *cf. Doe v. Wigginton*, 21 F.3d 733, 470 (6th Cir. 1994) (prisoners have no constitutional privacy right which bars disclosure of HIV-positive status to prison corrections officers). However, Plaintiff does not allege that he was required to disclose any medical information. According to the complaint, when Plaintiff raised his concerns about disclosing his medical history within hearing of another inmate, Defendant Dr. Khaad discussed the issue of privacy with Plaintiff and scheduled him for a follow up appointment to remedy his concerns. Therefore, Plaintiff's claim under the Fourteenth Amendment fails to state a constitutional violation.

### *Retaliation*

Retaliation for the exercise of a constitutional right is itself a violation of the First Amendment actionable under § 1983. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to state a retaliation claim, a plaintiff must show that: (1) he engaged in constitutionally protected conduct, (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct, and (3) the adverse action was motivated at least in part by the plaintiff's protected conduct. *King v. Zamiara*, 680 F.3d 686, 694 (6th Cir. 2012) (citing *Thaddeus-X*, 175 F.3d at 394).

Plaintiff claims that he was transferred from LMDC in retaliation for filing grievances. "[O]rdinarily a transfer would not deter a prisoner of ordinary firmness from continuing to engage in protected conduct." *Siggers-El v. Barlow*, 412 F.3d 693, 701 (6th Cir. 2005) (citing *Smith v. Yarrow*, 78 F. App'x 529, 543-44 (6th Cir. 2003)). "[T]ransfer to another institution of

7

the same security level, with no other aggravating factors, is not sufficiently adverse to deter a person of ordinary firmness from engaging in the exercise of protected First Amendment activity." *Friedmann v. Corr. Corp. of Am.*, 11 F. App'x 467, 471 (6th Cir. 2001); *Hix v. Tenn. Dep't of Corr.*, 196 F. App'x 350, 358 (6th Cir. 2006) ("[T]he transfer of a prisoner may rise to the level of unconstitutional retaliation where there are foreseeable consequences to the transfer that would inhibit the prisoner's ability to access the courts."). Plaintiff does not allege that his transfer carried any aggravating factors or foreseeable consequences that the transfer would inhibit his ability to access the courts. As such, Plaintiff has stated no constitutional violation with regard to his retaliation claim.

### *Verbal harassment*

Plaintiff complains that Defendant Ron made unprofessional comments to him on several occasions. The Eighth Amendment proscribes punishments which involve the unnecessary and wanton infliction of pain. *Whitley v. Albers*, 475 U.S. 312, 319 (1986). However, harassing or degrading language by a prison official, while unprofessional and despicable, does not amount to a constitutional violation. *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004); *Violett v. Reynolds*, 76 F. App'x 24, 27 (6th Cir. 2003) ("[V]erbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim."); *Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987). Therefore, Plaintiff's claim against Defendant Ron does not state a constitutional violation.

### *Medical care*

The Eighth Amendment to the U.S. Constitution protects against cruel and unusual punishment of prisoners, including denial of or inadequate medical care. To establish an Eighth Amendment violation premised on inadequate medical care, a prisoner must demonstrate that the

8

defendant acted, or failed to act, with "deliberate indifference to serious medical needs." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (quoting *Estelle*, 429 U.S. at 104); *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843 (6th Cir. 2002). Thus, to state a cognizable claim, a prisoner must show that the official "acted or failed to act despite his knowledge of a substantial risk of serious harm" to the inmate. *Terrance*, 286 F.3d at 843 (quoting *Farmer*, 511 U.S. at 842).

A difference of opinion between the inmate and the prison medical official(s) concerning diagnosis or treatment does not give rise to a constitutional violation. *Estelle*, 429 U.S. at 107. Nor does negligent medical care constitute a constitutional violation without deliberate indifference resulting in substantial harm. *Id*. at 106. Further, the courts make a distinction between cases in which there is a complete denial of medical care and those where the claim is one of inadequate medical treatment. *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id*.

Based on the complaint, Plaintiff received medical care, but he argues that he was given the wrong medication. This dispute amounts to a difference of opinion with the LMDC medical staff, and this Court will not second guess the medical judgments of the Defendant medical personnel. *Id.* Accordingly, Plaintiff fails to state a constitutional violation with respect to his medical care claims.

### *Access to copies and attorney*

Finally, Plaintiff complains that Defendant English failed to make a copy of a § 1983 complaint and failed to contact an attorney for him. Denial of access to legal materials or to an

9

attorney may give rise to a claim for denial of access to the courts. However, "'[i]n order to state a claim for interference with access to the courts, . . . a plaintiff must show actual injury." *Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005) (citing *Thaddeus-X*, 175 F.3d at 394) (noting that "the requirement that an inmate show 'actual injury' derives from the constitutional principle of standing")). "Meaningful access to the courts is the touchstone." *Lewis v. Casey*, 518 U.S. 343, 351 (1996) (internal citations omitted). The inmate therefore must go one step further and demonstrate that the alleged denial of access to the courts hindered his efforts to pursue a legal claim. "Examples of actual prejudice to pending or contemplated litigation include having a case dismissed, being unable to file a complaint, and missing a court-imposed deadline." *Harbin-Bey*, 420 F.3d at 578.

Plaintiff fails to allege that Defendant's failure to provide him copies or call an attorney on his behalf actually caused him injury or prevented him from meaningfully accessing the court. Therefore, he fails to state a constitutional claim with regard these allegations.

For the reasons stated above, the complaint fails to allege a constitutional violation. Therefore, Plaintiff's official-capacity claim against all Defendants will be dismissed. In addition, the Court notes that, had Plaintiff sued any of the Defendants in their individual capacities, the claims would fail for the same reasons.

**B.      HIPAA claim**

Plaintiff also appears to allege a violation of the Healthcare Portability and Accountability Act of 1996 or "HIPAA." However, HIPAA regulations do not confer a private right of action on an individual. Plaintiff's only remedy for an alleged HIPAA violation is to lodge a written complaint with the Secretary of Health and Human Services, through the Office for Civil Rights, who has the discretion to investigate the complaint and impose sanctions, both

10

civil and criminal. *See White v. Brand*, No. 2:08-CV-255, 2009 U.S. Dist. LEXIS 59676, at *2-3 (E.D. Tenn. 2009) (citing 45 C.F.R. § 160.306). Accordingly, Plaintiff's claim under HIPAA will be dismissed for failure to state a claim.

## IV.

For the foregoing reasons, Court will enter a separate Order dismissing the action.

Date:

cc: Plaintiff, *pro se*
4412.010